# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LEVY, *individually and on behalf of others similarly situated*,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>LYTX, INC.,<br><br>　　　　　　　　　　Defendant. | Case No. 16-cv-03090-BAS(BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS CLASS CLAIMS**<br><br>**[ECF No. 8]** |

Pending before the Court is Defendant Lytx, Inc.'s motion to compel Plaintiff Daniel Levy's claims for alleged violations of the Fair Labor Standards Act ("FLSA") and California Labor Code to individual arbitration and dismiss class allegations. (ECF No. 8.) Also pending is Defendant's request to stay the proceedings until the Supreme Court's review of *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 127 S. Ct. 809 (2017). (Reply, ECF No. 13.) Plaintiff filed an opposition, arguing that he may pursue class claims in this Court because Defendant's arbitration agreement ("Agreement") violates the National Labor Relations Act ("NLRA"). (ECF No. 11.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the

reasons that follow, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to compel individual arbitration and dismiss class allegations and **DENIES** Defendant's request to stay the proceedings.

I. <u>BACKGROUND</u>

Plaintiff Daniel Levy is a resident of San Diego, California. (Compl. ¶ 9, ECF No. 1.) Defendant, a technology company, provides analytics services for businesses that use fleets of drivers. (*Id.* ¶ 10; Cross Decl. ¶ 3, ECF No. 8.) Plaintiff began working for Defendant as a Technology Tech on April 14, 2008. (Cross Decl. ¶ 4.) On that day, Plaintiff signed the Agreement. (Cross Decl. Ex. B at 9.) The Agreement states in part:

> Although [Defendant] ("the Company") hope[s] that employment disputes will not occur, the Company believes that where such disputes do arise, it is in the mutual interest of everyone involved to handle them pursuant to the complaint process outlined in the Employee Handbook and then, if necessary, binding arbitration, which generally resolves disputes quicker than court litigation and with a minimum of disturbance to all parties involved. By entering into this agreement, the Company and the undersigned Employee are waiving the right to a jury trial for most employment-related disputes . . . . The Company and the undersigned Employee hereby agree that any dispute with any party that may arise from Employee's employment with the Company or the termination of Employee's employment with the company shall be resolved by mandatory, binding arbitration before a retired judge.

(*Id.* at 8.)

Although the Agreement does not cover some claims, such as those presented to an administrative agency or those based on the NLRA, the Agreement does cover claims made pursuant to the FLSA and California Labor Code. (*See* Cross Decl. Ex. B at 8-9.) The relevant coverage provision states in part: "The arbitration requirement applies to all statutory, contractual and/or common law claims arising from employment with the Company including, but not limited to . . . claims under the

federal Fair Labor Standards Act, or any other federal or state statute covering these subjects . . . ." (*Id.* at 8.) Finally, the Agreement incorporates the rules of the American Arbitration Association ("AAA"). (*Id.* at 9.) The rules provision states: "Binding arbitration under this Agreement shall be conducted in accordance with any applicable state statutes [sic] exist; then the arbitration shall be conducted pursuant to the rules of the [AAA] for employment law disputes." (*Id.*) The Agreement makes no specific mention of class or individual proceedings. (*See id.* at 8-9.)

On November 4, 2016, Plaintiff resigned from his employment with Defendant. (Cross Decl. ¶ 6.) On December 27, 2016, Plaintiff commenced this suit, alleging that Defendant violated federal and California labor laws by failing to pay wages and keep records according to the standards of the FLSA, the California Labor Code, and California's Unfair Competition Laws. Plaintiff brings a collective action for the alleged FLSA violations and a class action for the alleged violations of California labor law. Defendant now moves to compel individual arbitration of the nine claims asserted in Plaintiff's complaint and dismiss the class allegations. (ECF No. 8.) In the alternative, Defendant requests that the Court stay the proceedings pending the Supreme Court's ruling in *Morris*.[1] (ECF No. 13.) Plaintiff opposes. (ECF No. 11.)

//
//
//
//

---

[1] Defendant requests that the Court stay this litigation pending the Supreme Court's review of *Morris*, if the Court finds *Morris* applies to this case. (Reply 7:28-8:3.) However, "the Ninth Circuit has held that 'once a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority.'" *Rivera v. Saul Cheverolet, Inc.*, No. 16-vc-05966-LHK, 2017 WL 1862509, at *5 (N.D. Cal. May 9, 2017) (Koh, J.) (quoting *Yong v. I.N.S.*, 208 F.3d 1116, 1119 n.2 (9th Cir. 2000)) (denying defendant's request to stay litigation pending the Supreme Court's review of *Morris*). Because Defendant fails to supply any justification for a stay beyond stating that the *Morris* decision is approaching (Reply 7:26-7:28), the Court denies Defendant's request to stay the litigation pending the Supreme Court's review of *Morris*.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts that evidence transactions involving interstate commerce. 9 U.S.C. §§ 1, 2. The FAA provides that contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. The "primary" purpose of the FAA is to ensure that "private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). Therefore, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Given this strong federal preference for arbitration and the contractual nature of arbitration agreements, "a district court has little discretion to deny an arbitration motion" once it determines that a claim is covered by a written and enforceable arbitration agreement. *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991). Arbitration agreements, "[l]ike other contracts . . . may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "In determining whether to compel a party to arbitration, a district court may not review the merits of the dispute[.]" *Marriot Ownership Resorts, Inc. v. Flynn*, No. 14-00372 JMS-RLP, 2014 WL 7076827, at *6 (D. Haw. Dec. 11, 2014). Instead, a district court's determinations are limited to (1) whether a valid arbitration agreement exists and, if so, (2) whether the agreement covers the relevant dispute. *See* 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

//
//
//

### III. ANALYSIS

#### A. The Ninth Circuit's Decision in *Morris* Will Not Apply If the Agreement Permits Class Proceedings.

Plaintiff argues that the Agreement is illegal and invalid because Defendant's interpretation of the Agreement as precluding class claims violates the NLRA. (Opp'n, ECF No. 11.) In support, Plaintiff cites to *Morris v. Ernst & Young*, in which the Ninth Circuit examined "whether an employer violates the [NLRA] by requiring employees to sign an agreement precluding them from bringing, in any forum, a concerted legal claim regarding wages, hours, and terms and conditions of employment." 834 F.3d at 979. Applying *Chevron* deference to the National Labor Relations Board's interpretations of Sections 7 and 8 of the NLRA, the court observed that "[t]he NLRA establishes a core right to concerted activity." *Id.* at 980-84, 989.[2] The court concluded that "[i]rrespective of the forum in which disputes are resolved, employees must be able to act in the forum *together*." *Id.* at 989.

The Ninth Circuit found that the mandatory concerted action waiver at issue in *Morris* violated the NLRA because (1) the "separate proceedings clause" prevented employees' concerted activity in arbitration proceedings and (2) the requirement that employees use only arbitration precluded them from seeking concerted legal action in another forum. *See* 834 F.3d at 983-84. According to the court, an NLRA violation arises regardless of forum "so long as the exclusive forum provision is coupled with a restriction on concerted activity in that forum." *Id.* at 989. Ultimately, "[a]rbitration, like any other forum for resolving disputes, cannot be structured so as to exclude all concerted employee legal claims." *Id.*

*Morris* applies when employees are (1) limited to pursuing claims in only one forum and (2) prevented from acting in concert in that forum. *See* 834 F.3d at 983-

---

[2] Section 7 gives employees the right "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection," while Section 8 makes it "an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" Section 7. 29 U.S.C. §§ 157, 158.

84. Neither party disputes that the Agreement limits Plaintiff to only pursuing FLSA and related state law claims in arbitration. The Agreement's alleged illegality and invalidity arise from its disputed preclusion of class claims.[3] Therefore, the first question that must be resolved is whether the Agreement in fact prevents Plaintiff and other employees from acting in concert in arbitration.

> **B.    The Agreement's Silence on the Issue of Class Proceedings Is Not Determinative of Whether an Agreement to Permit Class Arbitration Exists.**

A court may not presume that "parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 687 (2010) (footnote omitted). However, the parties in *Stolt-Nielsen* "stipulated that there was 'no agreement' on [the] question" of whether they agreed to permit class arbitration. *Id.* In contrast, the parties in this case dispute whether the Agreement demonstrates an agreement to allow class arbitration. Defendant asserts that the Agreement neither intended nor authorized class arbitration, on the grounds that the Agreement mentions only two parties to the agreement ("the Company" and "the Employee") and specifically covers claims that arose from the "Employee's employment with the Company." (Mot. 11:5-11:17, ECF No. 8; Cross Decl. Ex. B. at 8-9.) Meanwhile, Plaintiff argues that the Agreement incorporates class arbitration by reference to the AAA rules and references to "all parties" and "all claims." (Opp'n 6:10-7:8.) Because a "failure to mention class arbitration in the arbitration clause itself does not necessarily equate with the 'silence' discussed in *Stolt-Nielsen*," the Court finds it necessary to determine whether this question of contract interpretation is one for the

---

[3] Plaintiff's and Defendant's briefs make further assertions as to why *Morris* should or should not apply (e.g., whether Plaintiff had a meaningful opportunity to opt out of the Agreement and whether the Agreement was a condition of employment). However, the first threshold question that must be addressed is whether the Agreement in fact prevents employees' participation in concerted activities in arbitration. Absent an answer to that threshold question, the Court will not address the parties' further arguments.

arbitrator. *See Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007, 1011 (N.D. Cal. 2011) (quoting *Vasquez v. ServiceMaster Glob. Holding Inc.*, No. 09-cv-05148-SI, 2011 WL 2565574, at *3 n.1 (N.D. Cal. June 29, 2011)).

A Supreme Court plurality in *Bazzle* determined that "[a]rbitrators are well situated to answer" the question of whether a contract permits class arbitration because "[i]t concerns contract interpretation and arbitration procedures." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003) (Stevens, J., concurring in the judgment but finding it only arguable that the arbitrator, rather than the court, should determine whether the contract allows for class claims). However, noting that Justice Stevens "did not endorse the plurality's rationale," the *Stolt-Nielsen* majority explained that "*Bazzle* did not yield a majority decision" as to whether an arbitrator must determine whether a contract allows for class proceedings. 559 U.S. at 679; *see also Yahoo! Inc.*, 836 F. Supp. 2d at 1011. Consequently, absent Ninth Circuit precedent on the issue, no binding authority "has explained definitively when the availability of class-wide arbitration might be a question for a court and when it might be a question for an arbitrator." *Vasquez*, 2011 WL 2565574, at *3.

More generally, the "question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*'" is reserved for judicial determination. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). When making that determination, courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, the arbitrator may decide whether the parties have agreed to arbitrate a particular dispute when the question has "clearly and unmistakably" been delegated to the arbitrator. *AT & T Techs., Inc.*, 475 U.S. at 649; *accord. Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Clear and unmistakable evidence of delegating the arbitrability question can include "an agreement to arbitrate a gateway issue," which is "simply an additional, antecedent

agreement the party seeking arbitration asks the federal court to enforce[.]" *See Rent-A-Ctr., W.*, 561 U.S. at 70. Thus, the Court looks to the Agreement to determine whether the parties intended for the arbitrator to determine whether the Agreement allows for class arbitration. Because the parties agreed that arbitration "shall be conducted in accordance with any applicable state statutes" and "then . . . pursuant to the rules of the [AAA] for employment law disputes" (Cross Decl. Ex. B at 9), the Court will examine in turn whether California law or the AAA rules govern this determination.

        **C.    The California Arbitration Act Does Not Require the Court to Determine the Availability of Class Arbitration.**

Parties may agree to arbitrate and be bound by rules different from the FAA, provided that there is no conflict between federal and state law. *See Volt Info. Scis.*, 489 U.S. at 478-79 ("Where . . . the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA . . . ."); *Wosley, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998) ("[P]arties are free to contract around the FAA by incorporating state arbitration rules into their agreements."). However, "if parties to an arbitration agreement (subject to the FAA) intend to be bound by state procedural rules, they must expressly incorporate those state procedural rules into their contract." *Stone & Webster, Inc. v. Baker Process, Inc.*, 210 F. Supp. 2d 1177, 1183 (S.D. Cal. 2002) (footnote omitted); *see also Brennan*, 796 F.3d at 1129 (finding federal arbitrability law to apply when the contract fails to "expressly state that California law governs the question of *arbitrability*"). When parties fail to incorporate such procedural rules into the agreement, the "strong default presumption is that the FAA, not state law, supplies the rules for arbitration." *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1269 (9th Cir. 2002) (citing *Wosley*, 144 F.3d at 1213) (interpreting a general choice-of-law clause as incorporating substantive state law, but not state arbitration procedures).

For example, even when the relevant agreement stipulated that "[a]ny dispute arising under this Agreement shall be settled by arbitration . . . in accordance with the English Arbitration Act . . . ," the Ninth Circuit concluded that although "English arbitration law clearly applie[d] to disputes that [we]re subject to arbitration," the agreement was "ambiguous concerning whether English law also applie[d] to determine whether a given dispute [was] arbitrable in the first place." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 941, 916, 921 (2011). Given that ambiguity, the court applied federal law, rather than English law, to determine arbitrability. *Id.* Further, in another example, the Ninth Circuit determined that an agreement containing a general California choice-of-law provision did not incorporate a section of the California Arbitration Act because the particular section impacted the state's "allocation of power between alternative tribunals" rather than affecting only substantive rights the state afforded to the parties. *Wosley*, 144 F.3d at 1212 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 64 (1995)).

The California Arbitration Act instructs the court to enforce arbitration agreements "unless *it* determines that . . . grounds exist for revocation of the agreement." Cal. Civ. Proc. Code § 1281.2(b) (emphasis added); *see also, e.g.*, *Breazeale v. Victim Servs., Inc.*, 198 F. Supp. 3d 1070, 1079 (N.D. Cal. 2016) (stating that "a court must refuse to compel arbitration" if grounds exist under § 1281.2(b)); *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 987 (2010) (stating that § 1281.2(b) "requires the court to decide the conscionability of an agreement in the process of deciding whether to grant or deny a motion to compel"). A finding as to whether the Agreement permits or prohibits concerted activity in any forum will inform whether there are any grounds for revocation of the Agreement under *Morris*. *See Morris*, 834 F.3d at 983-84 (concluding an arbitration agreement's separate proceedings clause is unenforceable on grounds that it violates a substantive federal right). The state law provision in the Agreement appears to allocate the question of class availability to the Court. However, the general clause in the Agreement does not expressly

incorporate the state procedural rules that govern allocation of the arbitrability question between the courts and arbitrators. (Cross Decl. Ex. B. at 9.) *See Wosley*, 144 F.3d at 1212 (finding the FAA, rather than the California Arbitration Act, applicable when a contract fails to make specific reference to the state arbitration rule). The Agreement neither references the California Arbitration Act nor incorporates § 1281.2(b). (*See* Cross Decl. Ex. B. at 8-9.) Consequently, the Court will not apply state statutes in determining the allocation of the class availability question, and therefore turns to whether the AAA rules resolve this issue.

### D. Incorporation of the AAA Rules Delegates to the Arbitrator the Issue of Whether Class Arbitration Is Available.

Like similarly situated courts, the Court finds that the Ninth Circuit's willingness to rely upon "clear and unmistakable evidence" when dealing with allocation of the question of arbitrability to be instructive when dealing with the question of availability of class proceedings. *See, e.g.*, *Yahoo! Inc.*, 836 F. Supp. 2d at 1011-1012; *supra* p. 7. Though not directly on point, the Ninth Circuit has held that when an agreement incorporates the AAA rules, it clearly and unmistakably demonstrates that the parties delegated the question of *arbitrability* to the arbitrator. *See Brennan*, 796 F.3d at 1130; *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (following "[v]irtually every circuit" in considering incorporation of the AAA rules to constitute clear and unmistakable evidence of an agreement to arbitrate arbitrability).

Other district courts in the Ninth Circuit treat the question of whether an agreement allows for class-wide arbitration similarly to how the Ninth Circuit treats the question of arbitrability. *See Guess?, Inc. v. Russell*, No. 16-cv-00780-CAS-ASX, 2016 WL 1620119, at *1 (C.D. Cal. Apr. 18, 2016); *Castaldi v. Signature Retail Servs. Inc.*, No. 15-cv-00737-JSC, 2016 WL 74640, at *16 (N.D. Cal. Jan. 7, 2016); *Accentcare, Inc. v. Jacobs*, No. 15-03668-JSW, 2015 WL 6847909, at *1 (N.D. Cal. Nov. 9, 2015); *Yahoo! Inc.*, 836 F. Supp. 2d at 1012. When an arbitration agreement

in an employment contract incorporates by reference the AAA rules, the reference "clearly and unmistakably" delegates the question of whether the agreement allows for class-wide arbitration to the arbitrator. *See Guess?, Inc.*, 2016 WL 1620119 at *6 ("[B]y incorporating the AAA's Model Rules for Arbitration of Employment Disputes, the parties . . . agreed to delegate the question of whether respondents could pursue their claims on a class-wide basis to an arbitrator."); *Accentcare, Inc.*, 2015 WL 6847909 at *4 (finding that "the question of arbitrability may be, and was, delegated to the arbitrator by the incorporation of the AAA rules"); *Yahoo! Inc.*, 836 F. Supp. 2d at 1012 (finding an arbitration agreement requiring "binding arbitration under the then current [AAA] National Rules for the Resolution of Employment Disputes" to constitute a "'clear[ ] and unmistakab[le]' agreement to have the arbitrator decide questions regarding the arbitrability of class-wide claims").

Defendant correctly asserts that an arbitration agreement's mere reference to the AAA rules does not establish that the agreement permits class arbitration. (Reply 5:9-5:24.) The AAA Supplementary Rules for Class Arbitrations ("Supplementary Rules") expressly dictate that when construing an arbitration clause, "the arbitrator shall not consider the existence of the Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting arbitration to proceed on a class basis." (Opp'n Ex. 2 at 2.) However, this does not resolve the present issue before the Court: whether the arbitrator is responsible for determining if class arbitration is available.

The Agreement's reference to the AAA rules controls the allocation of this threshold determination. A reference to the AAA rules incorporates the Supplementary Rules, as the Supplementary Rules "shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to *any of the rules* of the [AAA] where a party submits a dispute to arbitration on behalf of or against a class or purported class" and when "a court refers a matter pleaded as a class action to the AAA for administration." (Opp'n Ex. 2 at 1) (emphasis added). The Supplementary

Rules further instruct that "the *arbitrator* shall determine as a threshold matter . . . whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class." *Id.* at 2 (emphasis added). Consequently, references to the AAA rules, even without specific reference to the Supplementary Rules, "clearly and unmistakably evidence" the parties' intention to delegate the question of availability of class proceedings to the arbitrator. *See Yahoo! Inc.*, 836 F. Supp. 2d at 1012.

Here, the Agreement, entered into in April 2008, incorporated by reference the AAA rules. (Cross Decl. Ex. B at 9.) By agreeing to resolve disputes according to the AAA rules, Plaintiff and Defendant also agreed to follow the Supplementary Rules, which became effective on October 8, 2003. (Opp'n Ex. 2 at 1). Absent further, binding guidance, the Court finds that the incorporation of the Supplementary Rules constitutes clear and unmistakable evidence that the parties intended to allow the arbitrator, rather than the Court, to determine whether the Agreement permits class arbitration.[4] Consequently, the Court will grant in part Defendant's motion to compel arbitration because it finds that the parties agreed to arbitrate disputes regarding the availability of class proceedings. However, the Court will deny in part Defendant's motion to compel individual arbitration and further deny Defendant's motion to dismiss Plaintiff's class claims because the Court finds the arbitrator, not the Court, must determine whether class arbitration is permitted.

---

[4] A similar line of analysis applies broadly to disputes regarding the validity of the Agreement because "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *See Brennan*, 796 F.3d at 1130. Rule 6(a) in the AAA's Employment Arbitration Rules and Mediation Procedures specifies that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement." Consequently, the Court finds the Agreement's incorporation of the AAA rules (Cross Decl. Ex. B at 9) clearly and unmistakably delegates the question of the Agreement's validity to the arbitrator. When an arbitration agreement "clearly and unmistakably" delegates questions of arbitrability to the arbitrator, the "only remaining question is whether the particular agreement to delegate arbitrability . . . is itself unconscionable." *Brennan*, 796 F.3d at 1132. Because Plaintiff claims that the entire Agreement is illegal and invalid under the NLRA and *Morris*, and fails to argue that the particular delegation provision itself is unconscionable, the validity claim also remains reserved for the arbitrator. *See Rent-A-Ctr., W.*, 561 U.S. at 74-75 (refusing to consider the plaintiff's unconscionability claims because the plaintiff raised no challenge particular to the delegation provision).

## IV. CONCLUSION & ORDERS

In light of the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to compel individual arbitration and dismiss class claims. (ECF No. 8.) Specifically, the Court grants in part Defendant's request to compel arbitration and **ORDERS** Plaintiff and Defendant to submit to arbitration—in the manner provided for in the Agreement—the threshold issue of whether class arbitration is permitted. *See* 9 U.S.C. § 4. Further, because the issue of whether Plaintiff's class claims should be dismissed is properly one for the arbitrator, the Court denies Defendant's request to strike Plaintiff's class allegations. In addition, the Court **STAYS** this action pending resolution of the arbitration. *See* 9 U.S.C. § 3.

Finally, the Court directs the Clerk of the Court to **ADMINISTRATIVELY CLOSE** this case. The decision to administratively close this case pending resolution of the arbitration does not have any jurisdictional effect. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing. An order administratively closing a case is a docket management tool that has no jurisdictional effect.").

**IT IS SO ORDERED.**

DATED: June 28, 2017

Hon. Cynthia Bashant
United States District Judge